**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**PEDRO CARBAJAL-OLIMON,**

**Defendants.**

**Case No. 2:25-cr-132-1**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Defendant Pedro Carbajal-Olimon asks the Court to release him pending the final resolution of this criminal matter. (Doc. 26). He notes that the Court could accomplish this either (1) by issuing its own release order, or (2) by removing its stay of an earlier release order issued in the Southern District of California, where his original detention hearing occurred. (*Id.*). For the reasons explained below, the Court **DENIES** Carbajal-Olimon's request. (*Id.*). He shall remain detained pending a final resolution of this matter.

## BACKGROUND

In August 2025 a grand jury in this district indicted Carbajal-Olimon on two counts. (Doc. 5). Both relate to his alleged involvement in a drug trafficking operation.[1] The first count charges Carbajal-Olimon with conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

[1] The grand jury also indicted a co-defendant, Jose Solis, who remains at large. (Doc. 5; Doc. 28, #102 n.2).

(Doc. 5, #24); 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(vi), (viii). Count two of the indictment charges Carbajal-Olimon with conspiracy to use a communication facility in commission of a drug felony. (Doc. 5, #25); 21 U.S.C. §§ 846, 843(b), (d). If he is found guilty on the first charge, he faces a mandatory minimum ten-year term of incarceration, up to life. 21 U.S.C. § 841(b).

A few months after the grand jury indicted Carbajal-Olimon, law enforcement executed an arrest warrant and took him into custody in San Diego, California. (12/22/2025 Dkt. Entry). But he wasn't transferred to this district immediately. Instead, a magistrate judge on the United States District Court for the Southern District of California conducted an initial detention hearing. (*United States v. Carbajal-Olimon*, No. 3:25-mj-7109-1 (S.D. Cal. Dec. 26, 2025), 12/26/2025 Min. Entry); *see* Fed. R. Crim. P. 5. There, the government asserted that Carbajal-Olimon was a flight risk and moved to detain him pending trial. (*Carbajal-Olimon*, No. 3:25-mj-7109-1, 12/26/2025 Min. Entry). But the magistrate judge denied that motion and ordered Carbajal-Olimon released on surety bond subject to several restrictions. (*Id.*, Doc. 6). He wasn't released immediately though. Instead, the magistrate judge stayed his order for a few days so the government would have time to request this Court to stay Carbajal-Olimon's release and revoke the magistrate judge's order. (Doc. 9).

The government did so. And the Court granted the motion in part—it stayed the release order, but did not revoke it. (Doc. 10). Rather, the Court, through the then-assigned judge, said it would wait to rule on the government's revocation request until it had "an opportunity to review whether [Carbajal-Olimon] should be detained

pending trial." (*Id.* at #23). The Southern District of California then transferred Carbajal-Olimon to this district. (*Carbajal-Olimon*, 3:25-mj-7109-1, Doc. 16). So this Court scheduled a detention hearing. (1/28/2026 Notice of Hr'g). Just a few days before the hearing date, though, Carbajal-Olimon waived his hearing rights and agreed to remain in detention pending a final resolution. (Doc. 12). Accordingly, the Court ordered him detained. (Doc. 13).

But Carbajal-Olimon's waiver was not absolute. He reserved the right to request a detention hearing at a later date. (Doc. 12). And this Court recognized as much in its detention order. (Doc. 13, #43 n.1). Carbajal-Olimon now avails himself of that right and seeks a redetermination on his detention, either pursuant to the Court's detention order (Doc. 13) or alternatively under 18 U.S.C. § 3142(f). (Doc. 26). The Government opposed his request. (Doc. 28).

On October 21, 2026, shortly after the case was transferred to the undersigned, the Court held a telephone status conference. There the parties discussed Carbajal-Olimon's pending motion. (10/21/2026 Min. Entry). The parties agreed that the Court should order Pretrial Services to prepare a bond report and that, after reviewing that report, the Court should decide whether the Court needed to convene a detention hearing to resolve Carbajal-Olimon's request for pretrial release. (*Id.*). The Court ordered the report, and Pretrial Services prepared it. (*Id.*; Doc. 30). The time for Carbajal-Olimon to reply to the government passed not long after.

With that, this matter is ripe for the Court's consideration.

## LEGAL STANDARD

When a magistrate judge orders a defendant released pending trial, the Bail Reform Act of 1984 allows the government to move the district court to revoke that release order. 18 U.S.C. § 3145(a)(1). When the government files such a motion, the district court reviews the magistrate judge's release order de novo. *United States v. Moss*, No. 1:24-cr-66-3, 2024 WL 4328939, at *2 (S.D. Ohio Sep. 27, 2024); *United States v. Watkins*, No. 13-02, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (observing that, though the Sixth Circuit has not "spoken directly" on the appropriate standard of review in this circumstance, "most district courts in the Sixth Circuit have applied the de novo standard of review").

## LAW AND ANALYSIS

### A. A Second Detention Hearing Is Not Necessary.

Carbajal-Olimon first requests another detention hearing. (*See generally* Doc. 26). Initially, he made two arguments in support of that position: (1) the Court's detention order, which provided that "[a] detention hearing will be scheduled upon written motion," (Doc. 13, #43 n.1), grants him an independent right to a detention hearing, and alternatively, (2) circumstances have changed such that the Court should reopen Carbajal-Olimon's prior detention hearing under 18 U.S.C. § 3142(f)(2). (Doc. 26, #93–98). But at the October 21, 2026, telephone status conference, the parties agreed that the proper course of action was for the Court to order Pretrial Services to prepare a bond report and then, depending on what that

report revealed, "determine if a hearing is necessary." (10/21/2026 Min. Entry).[2] So the Court ordered the report, and Pretrial Services delivered. (*Id.*; Doc. 30).

Having reviewed that report, the Court finds that an additional detention hearing is not needed. Pretrial Services included detailed information about Carbajal-Olimon's background, criminal history, employment, and family ties. (Doc. 30). It also included the details of two individuals Carbajal-Olimon says can house him, provide him with a job, and act as third-party custodians if the Court releases him. (*Id.*). Given the thoroughness with which Pretrial Services investigated this matter, the Court sees no need for further fact gathering to assess Carbajal-Olimon's request for release.

### B. No Conditions of Release Could Reasonably Assure Carbajal-Olimon's Appearance and the Safety of the Community.

Ordinarily, the Court must presume that a defendant should be released pending trial and may order pretrial detention only if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). However, that paradigm flips and "there is a presumption in favor of detention" when the defendant

[2] That procedure, the Court finds, is more in line with regular practice. A district court may conduct a second detention hearing to take additional evidence, but it is not required to do so. 18 U.S.C. § 3142(f)(2); *United States v. Hanson*, No. 3:22-cr-76, 2022 WL 1813585, at *4 (N.D. Ohio May 3, 2022). In lieu of another detention hearing, district courts may simply rely on the evidence presented at the original hearing and any additional evidence or proffers the parties introduce. *United States v. McCollum*, 3:21-cr-35-2, 2021 WL 4468937, at *1 (E.D. Tenn. Sep. 29, 2021).

is indicted for "one of the crimes listed in section 3142(e)(3)." *Stone*, 608 F.3d at 945. To rebut that presumption, "the defendant must produce evidence that he is neither a danger to the community nor a risk of flight." *United States v. Brooks*, No. 21-1646, 2021 U.S. App. LEXIS 33089, at *4 (6th Cir. Nov. 5, 2021). That said, the defendant's burden on that front "is not heavy." *Id.* (quoting *Stone*, 608 F.3d at 945). He must only point to "some evidence" that he isn't a danger or a flight risk. *Id.* And the government always retains the burden of persuading the Court detention is proper. *Stone*, 608 F.3d at 945. Though, even when a defendant satisfies his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

Here, the presumption in favor of detention applies to Carbajal-Olimon because he is charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). To rebut the presumption, Carbajal-Olimon offered a Columbus-area release plan. (Doc. 26, #95–96). He also complied with Pretrial Services by providing information about his background. (*See generally* Pretrial Servs. Report Addendum, Doc. 30). Though this is not *much* evidence, it is "some evidence" that he isn't a danger or a flight risk. *Brooks*, 2021 U.S. App. LEXIS 33089, at *3 (quoting *Stone*, 608 F.3d at 945). Accordingly, the Court finds that Carbajal-Olimon has met his initial burden

of production and that he has rebutted the presumption in favor of pretrial detention. *Brooks*, 2021 U.S. App. LEXIS 33089, at *4.

But rebutting the presumption in favor of detention doesn't end the story. As noted, the Court still must determine whether the government has met its burden of showing that there are no conditions of release that could reasonably assure Carbajal-Olimon's appearance and the community's safety. 18 U.S.C. § 3142(e)(1). To make that determination, the Court must consider four factors: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Spivak*, 555 F. Supp. 3d 541, 547 (N.D. Ohio 2021) (quoting 18 U.S.C. § 3142(g)). The Court addresses each below.

**1. The Nature and Circumstances of the Offenses.**

The first factor the Court must consider is "the nature and circumstances of the offense[s] charged, including whether the offense[s] ... involve[d] ... a controlled substance." 18 U.S.C. § 3142(g)(1). The Court concludes that this factor weighs in favor of continued detention.

The indictment charges Carbajal-Olimon with conspiring to distribute and possess with intent to distribute at least 400 grams of fentanyl and at least 500 grams of a substance containing a detectable amount of methamphetamine. (Doc. 5, #24). He allegedly trafficked those substances into this district through the mail. (*Id.* at #25). Even small quantities of fentanyl and methamphetamine are highly dangerous.

*See Roberson*, 2022 WL 2980530, at *3 ("[T]wo milligrams of fentanyl is considered a potentially lethal dose."); *United States v. Lamar*, No. 19-cr-20515, 2021 WL 4398317, at *2 (E.D. Mich. Sep. 27, 2021) ("Methamphetamine [has a] high potential for abuse, with use potentially leading to severe psychological or physical dependence." (citation omitted)). And the government says that Carbajal-Olimon was responsible for receiving and distributing parcels that contained several *kilograms* of fentanyl and methamphetamine, much more than the minimum amounts specified in the indictment. (*See* Doc. 28, #101–102). If he is convicted, Carbajal-Olimon faces a mandatory minimum term of ten years in prison, with a possible sentence of up to life. 21 U.S.C. § 841(b).

To put it plainly, the government alleges that Carbajal-Olimon helped introduce large amounts of dangerous drugs into this district. (*See generally id.*). He could spend the rest of his life in prison. Given the quantity of the drugs allegedly involved, the dangers those drugs represented, and the severity of the potential sentence Carbajal-Olimon faces, the Court concludes that this factor favors continued detention.

**2. The Weight of the Evidence Against Carbajal-Olimon.**

The Court must next consider "the weight of the evidence against" Carbajal-Olimon. 18 U.S.C. § 3142(g)(2). The Court notes at the outset that this factor goes to the weight of the evidence of dangerousness or risk of flight, "not the weight of the evidence of the defendant's guilt." *Stone*, 608 U.S. at 948; *United States v. Bothra*, No. 19-1092, 2019 WL 8883547, at *2 (6th Cir. Mar. 28, 2019). Indeed, the Court is not

required (or even permitted) to determine Carbajal-Olimon's guilt. *Stone*, 608 U.S. at 948. That said, after reviewing and weighing the evidence on the two issues the Court is to consider, the Court concludes that Carbajal-Olimon would both pose a danger to the community and present a flight risk if he were released before trial. So this factor also favors continued detention.

Start with the evidence that suggests Carbajal-Olimon's release would pose a danger to the community. He is charged with trafficking significant quantities of fentanyl and methamphetamine into this district. (Doc. 5). The government has proffered witness statements and details from the investigation that led to Carbajal-Olimon's arrest, both of which suggest he received multi-kilogram shipments of those substances and that he has potential ties to the Sinaloa cartel. (Doc. 28, #101–102).[3] That's usually enough. "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947 n.6.

True, Carbajal-Olimon has a limited and relatively old criminal history and there is no evidence the offenses for which he was indicted here involved any violence. But a lack of criminal history is not dispositive. *United States v. Whigham*, No. 22-5444, 2022 U.S. App. LEXIS 19148, at *4 (6th Cir. July 12, 2022). And, where large quantities of drugs are involved, continued detention is appropriate "even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6. Given the quantities of drugs involved here and Carbajal-Olimon's potential ties

[3] At this stage, the government may proceed by proffer. *Stone*, 608 F.3d at 948–49; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C.Cir.1996) ("Every circuit to have considered the matter ... [has] permitted the Government to proceed by way of proffer.").

to a sophisticated drug trafficking operation, the weight of the evidence suggests he would pose a danger to the community if the Court released him before trial.

Turn next to the evidence that suggests Carbajal-Olimon poses a flight risk. He was born in Nayarit, Mexico, moved to California in 1993, and maintains strong ties to both locales. (Doc. 30, #113–114). He largely[4] lived in California up until his arrest in this case. (Doc. 30, #114). His partner and at least two of his five children currently live there. (Doc. 26, #86). Further clouding the picture, Carbajal-Olimon's parents live in Mexico. (Doc. 30, #114). And he routinely visited the country before he was arrested. (*Id.*). In fact, law enforcement arrested him on the day he returned from his most recent visit there. (*See id.*; 12/22/2025 Dkt. Entry). Conversely, his ties to Columbus are thin. He apparently resided here for a few months in 2024. (Doc. 30, #144; Doc. 28, #101–102). Apart from that, the Court cannot ascertain any strong connection to this district that would dissuade him from fleeing to either California or, even more problematically, Mexico. Moreover, Carbajal-Olimon faces a potential life sentence, which gives him "a greater incentive to flee." *United States v. Ho*, No. 3:16-cr-46, 2016 WL 5875005, at *4 (E.D. Tenn. Oct. 7, 2016) (collecting cases). Because of the severity of his potential sentence, his weak ties to this district, and his strong connections to both California and Mexico, the Court finds that Carbajal-

[4] The Court hedges because the timeline is muddy. The government represents that Carbajal-Olimon resided in Columbus "[f]rom at least February 2024 through August 2024" and that he maintained an apartment here. (Doc. 28, #101–102). Pretrial Services, however, did not confirm this information. (*See generally* Doc. 30). Regardless, Carbajal-Olimon does not claim that he has any substantial ties to Columbus, and the Pretrial Services report confirms that he spent most of his adult life in California. (*Id.*).

Olimon would pose a flight risk if he were released before trial.[5]

All said, this factor weighs in favor of continued detention.

**3. Carbajal-Olimon's History and Characteristics.**

The third factor the Court must consider is the defendant's "history and characteristics." 18 U.S.C. § 3142(3). That includes the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *Id.* § 3142(3)(A). The Court must also determine whether the defendant was "on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of [a] sentence" when they committed the offense. *Id.* § 3142(3)(B).

The analysis of this factor largely duplicates what the Court just discussed above. Carbajal-Olimon has strong family and community ties to California and Mexico, but almost no connection to Ohio. (Doc. 30, #113–14). That is further evidenced by the fact that he met the two individuals he names in his Columbus-area release plan only in the last few months while he was detained in this case. (*Id.* at #114). Apart from that, Carbajal-Olimon has little by way of relevant "past conduct" or "history relating to drug or alcohol abuse, criminal history, and record concerning

[5] The Court could perhaps address the risk of flight to California by releasing Carbajal-Olimon to supervision there. Indeed, he raises that as a possibility. (Doc. 30, #114). But, while that may reduce the risk of him fleeing this jurisdiction to go there, California's proximity to Mexico increases the risk he may ultimately flee to that country, were this Court to release him to California. *See, e.g.*, *United States v. Lizardi*, No. 25-mj-04284, 2025 WL 3482748, at *2 (S.D. Fla. Dec. 3, 2025) (denying release to California because defendant was a citizen of Mexico and release would give her "the needed proximity to Mexico to flee").

appearance at court proceedings." 18 U.S.C. § 3142(3). He has a consistent employment record, good physical and mental health, and few assets.[6] (Doc. 30, #114). And it does not appear that he was on probation or parole for a prior offense or that he was on release pending trial in another matter. 18 U.S.C. § 3142(3).

As this factor largely duplicates the risk-of-flight analysis the Court conducted above, the Court affords it no additional weight.

**4. The Nature and Seriousness of the Danger Carbajal-Olimon Poses to the Community.**

The final factor the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As the Court noted above, Carbajal-Olimon allegedly trafficked large quantities of fentanyl and methamphetamine into this district. That's enough for the Court to conclude that this factor weighs in favor of continued detention. *Stone*, 608 F.3d at 947 n.6; *United States v. Roberson*, No. 1:21-cr-127, 2022 WL 2980530, at *8 (S.D. Ohio July 28, 2022).

*    *    *

Weighing all four factors under 18 U.S.C. § 3142(g), the Court finds that no conditions of release could reasonably assure Carbajal-Olimon's appearance and the safety of the community. 18 U.S.C. § 3142(e)(1). Accordingly, the Court denies his motion for bond. (Doc. 26).

---

[6] The government does, however, allege that Carbajal-Olimon was laundering drug proceeds through his significant other. (Doc. 28, #107).

## CONCLUSION

For the reasons explained below, the Court **DENIES** defendant Pedro Carbajal-Olimon's motion for bond. (Doc. 26). Carbajal-Olimon shall remain detained pending a final resolution of this matter.

**SO ORDERED.**

November 17, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**